**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

SINDY JEAN,                                   CASE NO.: 9:23-cv-81026-RLR

        Plaintiff,

v.

WAL-MART ASSOCIATES, INC.,

        Defendant.

_____/

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

CASE NO.: 9:23-cv-81026-RLR

Defendant, WAL-MART ASSOCIATES, INC. ("Walmart" or "Defendant"), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, files its Motion for Summary Judgment and Incorporated Memorandum of Law and requests that this Court enter summary judgment in its favor on all Counts of Plaintiff's Complaint ("Complaint"). Walmart concurrently files its Statement of Undisputed Material Facts ("**Facts**"). In support, Walmart states as follows:

## PRELIMINARY STATEMENT

Plaintiff worked for Walmart at Store 3348 in Lake Park, Florida, as a Stocking Team Associate from January 4, 2018, until her termination on May 18, 2023. The Complaint brings four counts against Walmart. In Count I, Plaintiff claims that Walmart interfered with Plaintiff's FMLA rights by failing to provide her with adequate notice of her FMLA eligibility and other required information. This claim fails because Walmart, through its third-party administrator, Sedgwick, provided Plaintiff with notice of her rights and obligations under the FMLA, in writing, and, independent of any request by Plaintiff, converted Plaintiff's workers' compensation leave request to an FMLA medical leave request after determining that Plaintiff was ineligible for workers' compensation leave because her medical provider never authorized her to miss even a single day of work.

Count II (FMLA interference), Count III (FMLA retaliation), and Count IV (workers' compensation retaliatory discharge in violation of Florida Statute § 440.205) allege that Plaintiff was wrongfully terminated. These claims fail for various reasons, most importantly because Walmart legitimately terminated Plaintiff's employment due to Plaintiff's serial attendance violations. Plaintiff accumulated *more than 7 times* the number of occurrences that subjects associates to termination for unauthorized absences and No Call/No Show's (associates are subject to termination when they incur *five or more occurrences* in a 6-month period and Plaintiff accumulated *37 occurrences*).

In sum, Walmart is entitled to summary judgment on each of Plaintiff's claims because the evidence, including Plaintiff's own sworn deposition testimony, demonstrates that no genuine issue of fact exists and, as such, summary judgment in Walmart's favor is warranted on all claims.

## MEMORANDUM OF LAW

### I.   Summary Judgment Standard

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v.*

1

*Catrett*, 477 U.S. 317, 327 (1986) (internal quotation omitted). The moving party bears the initial responsibility of showing the Court, by reference to the record, that there are no genuine issues of material fact to be decided at trial. *Id.* at 323. A fact is "material" if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

When the non-moving party bears the burden of proof, the moving party need not offer evidence negating the opponent's claim. *Celotex Corp.*, 477 U.S. at 323. Instead, the moving party may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Id*. at 325. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in the State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc).

When a moving party meets its burden, the non-moving party must "go beyond the pleadings," and by affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific evidence showing there is a "genuine issue for trial." *Celotex Corp.*, 477 U.S. at 322. It is the non-moving party's obligation to come forward with ***specific facts*** showing that there is a genuine issue for trial, not "mere allegations or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear … that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party." *Anderson*, 477 U.S. at 249. Summary judgment is proper if the non-moving party fails to make this showing. *Id*. at 249-50.

**II.     Plaintiff's FMLA retaliation claim (Count III) fails because she cannot establish a *prima facie* case**.

Where, as here, there is no direct evidence of FMLA retaliation, courts evaluate FMLA retaliation claims under the same burden-shifting framework used in Title VII cases under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Walker v. United Parcel Serv., Inc.*,

No. 21-11267, 2022 WL 10083816, at *3 (11th Cir. Oct. 17, 2022) (citing *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010)); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999).  To establish a *prima facie* case of FMLA retaliation, the plaintiff must show that: (1) she engaged in statutorily protected conduct; (2) she suffered a materially adverse action; and (3) the adverse action was causally related to the protected conduct. *Walker*, 2022 WL 10083816, at *3 (citing *Schaaf*, 602 F.3d at 1243).

Unlike FMLA interference (discussed below in sections IV and V), to establish FMLA retaliation, an employee must demonstrate that the employer intentionally discriminated against the employee in the form of an adverse employment action for having exercised an FMLA right. *Schaaf*, 602 F.3d at 1243.  In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that the employer's actions were "motivated by an impermissible retaliatory or discriminatory animus."  *Id*. (internal quotation omitted).

Plaintiff cannot show that she engaged in FMLA protected activity, let alone a causal connection between protected activity and her termination.  Therefore, Plaintiff cannot establish a *prima facie* case.

### A.     Plaintiff cannot establish that she engaged in FMLA protected activity.

"When an employee requests time off or provides notice to [her] employer of [her] need to take time off for a serious health condition, [s]he engages in statutorily protected activity under the FMLA."  *Walker*, 2022 WL 10083816, at *3 (quoting *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383-84 (11th Cir. 2005)).  For the purpose of this motion, Walmart does not dispute that Plaintiff had a serious health condition arising from her workplace accident on February 8, 2023.  [Facts, ¶ 10].

Plaintiff, however, did not engage in any protected activity under the FMLA.  Plaintiff testified that, after the Lifting Restriction resulting from her 2023 workplace accident, Plaintiff did not want, and did not request, FMLA leave.  [Facts, ¶ 25].  Plaintiff further testified that she informed Walmart that the "only thing" she wanted was to be placed in a job where she was able to work.  [*Id*.].  Therefore, based on Plaintiff's own sworn testimony, Plaintiff did not engage in any FMLA protected activity.

### B.     Even if Plaintiff could establish protected activity, she cannot establish causation between protected activity and her termination.

Both at the *prima facie* stage and (if the plaintiff meets her *prima facie* burden) at the stage

of analysis after which the defendant has articulated a legitimate, nonretaliatory reason for its action, the plaintiff must prove the requisite causal connection. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021). At the *prima facie* stage, the plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Id*. (*quoting Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135 (11th Cir. 2020) (en banc)).

As a threshold – and dispositive – matter, Plaintiff testified that, in her view, she was ***not*** terminated because she requested FMLA leave or engaged in any other FMLA protected activity. [Facts, ¶ 58]. Plaintiff further testified that, in her view, the only reason she was terminated was because she could not work after her workplace accident. [*Id*.]. This admission dooms Plaintiff's *prima facie* case even under the more relaxed "wholly unrelated" standard. *See Clodfelter v. Miami-Dade Cnty.*, 574 F. Supp. 3d 1183, 1190 (S.D. Fla. 2021) (holding that the plaintiff failed to establish *prima facie* causation where "the only evidence of [the supervisor's] purported disdain for FMLA leave is Plaintiff's self-serving statement").

Furthermore, a plaintiff bringing an FMLA retaliation claim faces the increased burden of showing that the employer's actions were "motivated by an impermissible retaliatory or discriminatory animus." *Schaaf*, 602 F.3d at 1243 (internal quotation omitted). The evidence here reveals no comments or acts by Walmart that show a retaliatory or discriminatory animus towards Plaintiff because Plaintiff exercised, or attempted to exercise, any FMLA rights. Critically, Plaintiff cannot dispute that no one from Walmart ever told Plaintiff not to use or apply for FMLA leave, further dooming her claim. *See Brown v. Pub. Health Trust of Miami-Dade Cty.*, No. 1:18-CV-21457-UU, 2018 WL 10760075, at *11 (S.D. Fla. Dec. 18, 2018) (granting summary judgment because the plaintiff "failed to provide evidence of any acts motivated by discriminatory animus," including no evidence that any supervisors "told her not to use her FMLA leave or not to apply for FMLA leave"); *Clodfelter*, 574 F. Supp. 3d at 1190-91 (holding that the plaintiff failed to establish *prima facie* causation where there was "no evidence in the record to suggest that [the supervisor] ever denied an employee FMLA leave or had a problem with Plaintiff taking FMLA leave").

In fact, as in *Brown*, the same third party vendor as in the instant case, Sedgwick Claims Management Services, Inc. ("Sedgwick"), not Walmart, reviewed and determined whether Plaintiff's FMLA leave request would be approved or denied. [Facts, ¶¶ 3, 46, and 50]; *see Brown*, 2018 WL 10760075, at *11 (explaining that "Plaintiff's FMLA leave requests were

reviewed … externally by Defendant's third party vendor, Sedgwick," further negating evidence of discriminatory animus). In sum, based on Plaintiff's own sworn testimony and the absence of discriminatory animus by Walmart, Plaintiff cannot meet her burden of establishing the causation element of the *prima facie* case of FMLA retaliation.

**III.     Even if Plaintiff could establish a *prima facie* case of FMLA retaliation, Count III fails because Walmart has articulated a legitimate, non-retaliatory reason for Plaintiff's termination and Plaintiff cannot establish it was pretextual**.

    **A.     Walmart terminated Plaintiff for a legitimate, non-retaliatory reason.**

If Plaintiff could establish a *prima facie* case, the burden would shift to Walmart to articulate a legitimate, non-retaliatory reason for Plaintiff's termination. *Gogel*, 967 F.3d at 1136; *Walker*, 2022 WL 10083816, at *3. In showing that a defendant has a legitimate, non-retaliatory reason for its actions, a defendant's burden is "exceedingly light." *Anderson v. Emory Healthcare, Inc.*, No. 21-13358, 2022 WL 3099342, at *4 (11th Cir. Aug. 4, 2022) (concluding that the employer met its "exceedingly light" burden of articulating a legitimate, non-retaliatory reason for its decision); *Dixon v. Odwalla, Inc.*, No. 08-61593-CIV, 2010 WL 745505, at *3 (S.D. Fla. Feb. 26, 2010), aff'd, 403 F. App'x 350 (11th Cir. 2010) (same). When examining an employer's proffered reason, "the court does not sit as a super-personnel department, and must accept the employer's stated reasons as given." *Gaston v. Home Depot USA, Inc.*, 129 F. Supp. 2d 1355, 1373 (S.D. Fla. 2001).

Walmart meets its burden of articulating a legitimate, non-retaliatory reason. Walmart terminated Plaintiff's employment not because she requested or took FMLA leave, but because she accumulated too many unauthorized, unreported absences in violation of Walmart's Attendance Policy and contrary to Sedgwick's instructions directing Plaintiff to report each scheduled workday that she misses while her leave request was pending. [*See* Facts, ¶¶ 17-20, 22, 32, 48, and 54-56]. Indeed, Plaintiff accumulated 37 occurrences in a 6-month period for failing to show up at work and for No-Call/No Show's – ***more than 7 times*** the number of occurrences (five) that subjects associates to termination. [Facts, ¶¶ 18-20 and 55].

By way of background, on February 8, 2023, Plaintiff sustained a workplace injury and reported it to Walmart, and, that day, Plaintiff's workers' compensation claim was opened. [Facts, ¶¶10].

During Plaintiff's employment, and currently, is the third-party administrator that handles

the workers' compensation and FMLA leave of absence process for Walmart associates at Store 3348. [Facts, ¶ 3]. Sedgwick communicates with associates about the requested leave of absence, reviews the associate's medical documents in evaluating the leave request, makes the decision whether to approve or deny the leave request, and notifies the associate whether or not the leave request has been approved or denied (no leave decisions are made by anyone at the Store level). [Facts, ¶ 4]. Sedgwick notifies Walmart when an associate applies for leave and whether Sedgwick has approved or denied the leave. [Facts, ¶ 5].

As such, on February 13, 2023, Sedgwick sent Plaintiff an email attaching a letter entitled "Understanding Your Leave of Absence." [Facts, ¶ 14]. The February 13th letter, under the bold heading, "**REMINDER**," notifies Plaintiff that "[y]ou are required to report each scheduled day missed through your normal call-in procedures … until your claim [for leave] is approved." [Facts, ¶ 17]. The specific call-in procedures are explained in the Attendance Policy. [*Id*.]. The February 13th letter also allowed Plaintiff to report her absences through the Walmart App on her mobile phone. [Facts, ¶ 22].

Then, on April 12, 2023, Sedgwick sent another email and attached letter to Plaintiff again notifying Plaintiff, under the bold heading, "**REMINDER**," that she must report each scheduled day of work that she misses. [Facts, ¶ 32].

The last day that Plaintiff worked any portion of a scheduled shift was April 26, 2023. [Facts, ¶ 47]. The next time Plaintiff appeared for work was on May 7, 2023. [*Id*.]. As Plaintiff testified, between April 26 and May 7, 2023, Plaintiff continued to have her "normal schedule" but she "***didn't go***" to work. [*Id*.].

And, contrary to Sedgwick's written instructions to Plaintiff and in violation of the Attendance Policy, Plaintiff *failed to report* her absences from work while her FMLA leave request was pending. [Facts, ¶ 48]. Even more, during Plaintiff's employment, Plaintiff knew that she was required to follow Walmart's Attendance Policy and, if she accumulates five or more occurrences in a six-month period, she would be subject to termination. [Facts, ¶¶ 20-21, 57].

On May 3, 2023, Sedgwick emailed Plaintiff the Leave Denial letter denying FMLA leave for Plaintiff ("Leave Denial"). [Facts, ¶ 41].

On May 4, 2023, Walmart sent a "Denial of Leave-Return to Work" letter to Plaintiff notifying Plaintiff that Sedgwick denied her LOA request on May 3, 2023, and directing Plaintiff to "immediately contact [her] manager or HR Representative to make plans for [her] return to

work." [Facts, ¶ 50].

The Denial of Leave-Return to Work letter informs Plaintiff that, in order to return to work from absences due to "your own serious health condition, you'll need to provide a written release/Return to Work Certification to your manager or HR Representative on your first day back." [Facts, ¶ 51].

On May 7, 2023, Plaintiff arrived at work, but was not allowed to return to work because she failed to provide the Return to Work Certification as Plaintiff was directed to do in the Denial of Leave-Return to Work letter. [Facts, ¶ 52]. Neither on May 7, 2023, nor at any other time, did Plaintiff provide Walmart with the Return to Work Certification or any written release allowing Plaintiff to return to work from her absences due to her workplace injury even though Sedgwick provided the Return to Work Certification as part of the FMLA Packet on April 12, 2023. [Facts, ¶ 53].

And, Because Plaintiff's FMLA leave of absence was denied and Plaintiff failed to report her absences while her leave request was pending – as Sedgwick directed Plaintiff to do – Plaintiff accumulated more than five (5) occurrences in a rolling 6-month period subjecting her to termination under the Attendance Policy. [Facts, ¶¶ 18-20 and 54]. Therefore, on May 18, 2023, Walmart terminated Plaintiff's employment. [Facts, ¶ 56]. Indeed, as of May 15, 2023 (three days before Plaintiff's termination date), Plaintiff accumulated 37 occurrences in the rolling 6-month period, by far, the highest number of occurrences at Store 3348. [Facts, ¶ 55].

Thus, if the Court determines that Plaintiff made a *prima facie* showing (which she has not done), Walmart has rebutted the presumption that Plaintiff's termination was the product of an intent to retaliate under the FMLA.

### B. Plaintiff cannot establish "but-for" causation as is necessary to rebut Walmart's legitimate, non-retaliatory reason for termination.

At this next "stage of summary judgment proceedings in which the plaintiff must rebut the defendant's proffered nonretaliatory reason for its action, … the plaintiff must meet the ***more demanding 'but for'*** test. *Tolar*, 997 F.3d 1280, 1294 (11th Cir. 2021) (emphasis added). "To establish the necessary causation, a plaintiff must demonstrate that 'her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Gogel*, 967 F.3d at 1135 (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)). *See also Lapham v. Walgreen Co.*, No. 6:19-cv-579, 2021 WL 716630, *2 (M.D. Fla. Jan. 14, 2021) ("The Eleventh Circuit has

consistently interpreted § 2615 of the FMLA to prohibit employers from discriminating against an employee '***because*** [s]he engaged in an activity protected by the Act.'") (quoting *Pereda v. Brookdale Senior Living Cmtys., Inc.*, 666 F.3d 1269, 1272 (11th Cir. 2012)) (emphasis added by the *Lapham* court).

As required by the Supreme Court, district courts within the Eleventh Circuit likewise require the plaintiff to establish that the protected activity was the but-for cause of the adverse employment action, rather than a "motivating factor," where the plaintiff need only show that the protected activity contributed to the defendant's decision. *See Lapham*, 2021 WL 716630, *3 (holding that the plaintiff "must demonstrate that her protected activity under the … FMLA was the but-for cause of her termination"); *Garrard v. Wal-Mart Stores, Inc.*, No. 8:15-cv-2476, 2016 WL 11491316, at *4 (M.D. Fla. Nov. 7, 2016) (holding that, "as mandated by the Supreme Court, [the plaintiff] bears the burden of proving that his FMLA leave request was the 'but for' cause [of the adverse employment action]"); *Jones v. Allstate Ins. Co.*, 281 F. Supp. 3d 1211, 1219 (N.D. Ala. 2016) ("This court applies the [*Nassar*] 'but-for' requirement to FMLA retaliation in light of [the FMLA's] text, structure, and history."), *aff'd*, 707 F. App'x 641 (11th Cir. 2017).

Therefore, to defeat summary judgment, Plaintiff must demonstrate that Walmart's proffered reason for its termination decision – Plaintiff's attendance violations – was merely a pretext to mask its real reason – Plaintiff's FMLA activity – and that, but for this latter action, Walmart would not have fired her. *See Gogel*, 967 F.3d at 1136.

The Eleventh Circuit has "repeatedly emphasized that, '[p]rovided ... the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it….'" *Gogel*, 967 F.3d at 1136 (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)); *see also Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1312 (11th Cir. 2018) (same). "[T]he employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030. Further, a legitimate, non-discriminatory reason proffered by the employer is not a pretext for prohibited conduct unless the plaintiff ***shows*** that ***both*** the reason is false ***and*** the real reason is impermissible retaliation. *Godwin v. Corizon Health*, 732 Fed. Appx. 805, 807-08 (11th Cir. 2018) (affirming summary judgment for employer on plaintiff's FMLA retaliation claim). Notably, the reasons asserted by an employer for its employment decision need not be correct or fair. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999) (holding that "a defendant may terminate an employee for a good or bad reason without

violating federal law"). "[A court's] inquiry is limited to whether the employer gave an honest explanation of its behavior." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted). "[T]o establish pretext at the summary judgment stage, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel*, 967 F.3d at 1136.

Plaintiff cannot show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Walmart's stated reason for discharging her – attendance violations amounting to **over 7 times** the number of occurrences that subjects associates to termination – sufficient to provide a legitimate ground for a reasonable factfinder to find that explanation to be unworthy of credence. In short, based on the record evidence, Plaintiff cannot "prove that had she not [engaged in FMLA activity], she would not have been fired." *Gogel*, 967 F.3d at 1135. Therefore, even if the Court determines that Plaintiff has established a *prima facie* case, the Court should enter summary judgment in Walmart's favor on Plaintiff's FMLA retaliation claim.

IV. **Plaintiff's claims for FMLA interference (Counts I and II) fail because Plaintiff cannot show that Walmart denied a benefit to which Plaintiff was entitled**.

To establish a *prima facie* case of FMLA interference, a plaintiff must show that she was denied a benefit to which she was entitled under the FMLA, such as taking leave. 29 U.S.C. § 2615(a)(1); *Walker*, 2022 WL 10083816, at *2; *Chavous v. City of Saint Petersburg*, 576 F. Supp. 3d 1040, 1049 (M.D. Fla. 2021), aff'd, No. 22-10228, 2024 WL 366243 (11th Cir. Jan. 31, 2024); *Parcesepe v. Geo Grp., Inc.*, No. 5:20CV82-TKW-MJF, 2021 WL 5033986, at *6 (N.D. Fla. Mar. 22, 2021). "For an employer to be held liable for FMLA interference, the request for leave must have been the ***proximate*** cause of the termination." *Walker*, 2022 WL 10083816, at *2 (citing *Schaaf*, 602 F.3d at 1242) (emphasis added).

A. **This Court should grant summary judgment in favor of Walmart on Count I**.

Count I of the Complaint alleges that Walmart interfered with Plaintiff's FMLA rights by failing to notify Plaintiff of her eligibility status and rights under the FMLA and whether her leave was or could be designated as FMLA leave. [ECF No. 1, ¶¶ 40, 42, and 54].[1] The evidence shows that Plaintiff cannot establish Count I.

---

[1] Paragraph 40 under Count I and paragraph 54 under Count II are identical.

"Once an employee gives sufficient notice to her employer that potentially FMLA-qualifying leave is needed, the employer must then ascertain whether the employee's absence actually qualifies for FMLA protection." *Walker*, 2022 WL 10083816, at *2 (quoting *Cruz*, 428 F.3d at 1383). This is exactly what Walmart did. And an employee must also comply with an employer's usual and customary procedural requirements for requesting leave. *Walker*, 2022 WL 10083816, at *2 (quoting 29 C.F.R. §§ 825.302(d), 825.303(c)). This is exactly what Plaintiff failed to do.

Between the date of Plaintiff's workplace injury on February 8, 2023, and the termination of Plaintiff's employment on May 18, 2023, Walmart's FMLA Leave of Absence Policy was in effect. [Facts, ¶ 34]. Walmart prohibits discrimination or retaliation against any associate for requesting or taking FMLA leave. [Facts, ¶ 35]. Eligible associates are entitled to up to 12 weeks of FMLA job-protected leave in a rolling 12-month period for an associate's own serious health condition. [Facts, ¶ 36]. After an associate provides notice of the need for FMLA leave, Sedgwick will notify the associate whether the associate is eligible for FMLA leave and has FMLA leave available. [*Id*.].

To be approved for FMLA leave, the associate must submit the completed certification forms to Sedgwick within 20 days of when the Notice of Eligibility, Rights & Responsibilities was sent by Sedgwick. [Facts, ¶ 37]. Sedgwick provides the associate with the certification forms that the associate must complete. [*Id*.].

In the course of administering Plaintiff's workers' compensation leave request, on April 11, 2023, Sedgwick determined that Plaintiff was ineligible for workers' compensation leave because Plaintiff "was never taken out of work by [an] authorized doctor" and the Walmart store where Plaintiff was working had received the Lifting Restriction allowing her to work as of February 9, 2023, which is the day immediately after her workplace injury. [Facts, ¶ 24]. Because Sedgwick concluded that Plaintiff was not eligible for workers' compensation leave, Sedgwick, on April 11, 2023, converted Plaintiff's workers' compensation leave request to an FMLA medical leave request. [Facts, ¶ 26].

The next day, April 12, 2023, Sedgwick sent Plaintiff an email attaching a new "Understanding Your Leave of Absence" letter, as well as a packet of FMLA leave documents ("FMLA Packet"). [Facts, ¶ 27]. The Understanding Your Leave of Absence letter notifies Plaintiff that she is eligible for FMLA leave, "if approved." [Facts, ¶ 28]. The Notice of

Eligibility Rights & Responsibilities ("FMLA Rights Notice") further notifies Plaintiff that, if FMLA leave is approved, "[y]ou have the right under FMLA for up to 12 weeks of unpaid leave in a 12-month period, calculated as a 'rolling' 12-month period measured backward from the date of any FMLA leave usage."  [*Id.*].

The FMLA Rights Notice, in bold print, notifies Plaintiff that, "**[i]n order to determine whether your absence qualifies for leave, you must provide [Sedgwick] with a completed certification form no later than 05/02/2023**."  [Facts, ¶ 29].  The FMLA Packet contains the certification that Plaintiff's healthcare provider must complete for FMLA leave to be approved. [Facts, ¶ 30].  The FMLA Rights Notice further notifies Plaintiff that, once Sedgwick receives the required medical documents and medical certification, Sedgwick will make a final decision on Plaintiff's leave status.  [Facts, ¶ 31].

Based on this extensive FMLA information that Plaintiff received, Plaintiff cannot establish that Walmart interfered with her rights under the FMLA by failing to provide her with notice of FMLA eligibility or any other FMLA-required information.  Therefore, this Court should grant summary judgment for Walmart on Count I.

**B.     This Court should grant summary judgment in favor of Walmart on Count II**.

Count II alleges that Walmart interfered with Plaintiff's FMLA rights when it terminated her employment.  [ECF No. 1, ¶ 56].  Count II fails because Plaintiff cannot establish that she was entitled to take FMLA leave, let alone that the FMLA request was the proximate cause of her termination.

"If the employee does not provide a complete and sufficient certification or any certification, the 'employer may deny the taking of FMLA leave.'"  *Walker*, 2022 WL 10083816, at *2 (quoting 29 C.F.R. § 825.305(c)).  "The employee bears the responsibility to furnish a complete and sufficient certification, or to provide his healthcare provider with the necessary authorization so that his health care provider can 'release a complete and sufficient certification to the employer to support the employee's FMLA request.'"  *Id*. (quoting 29 C.F.R. § 825.305(d)). "Importantly, if 'the employee never produces the certification, the leave is not FMLA leave.'" *Id*. (quoting 29 C.F.R. § 825.313(b)).  Under the FMLA Policy, if an associate fails to timely provide the completed certification forms to Sedgwick, FMLA leave may be denied and the associate's absences may not be protected under the FMLA.  [Facts, ¶ 38].

Pursuant to the FMLA Policy, on April 12, 2023, Sedgwick provided Plaintiff with the

FMLA Packet, including the FMLA Rights Notice and the certification form, and allowed Plaintiff 20 days to submit the completed certification form (until May 2, 2023). [Facts, ¶ 39]. Plaintiff failed to provide the required medical certification to Sedgwick by the deadline of May 2, 2023, or at all. [Facts, ¶ 40]. Therefore, on May 3, 2023, Sedgwick emailed Plaintiff the Leave Denial letter denying FMLA leave for Plaintiff ("Leave Denial"). [Facts, ¶ 41]. Also, on May 3, 2023, Sedgwick spoke with Plaintiff informing her that her FMLA leave request was denied because Plaintiff failed to provide the required medical information. [Facts, ¶ 42]. Plaintiff told Sedgwick that she understood and there is no evidence showing that Plaintiff objected. [*Id*.].

In the Leave Denial, Sedgwick gave Plaintiff another opportunity to provide the required medical documentation, allowing Plaintiff an additional 12 business days to do so, until May 18, 2023. [Facts, ¶ 43]. Despite receiving this second opportunity, Plaintiff did not provide the required medical information or certification of healthcare provider by the deadline of May 18, 2023, or, at all. [Facts, ¶ 46]. Therefore, Sedgwick properly denied Plaintiff's FMLA leave request. [*Id*.]. As such, this Court should grant summary judgment for Walmart on Count II. *See Magwood v. RaceTrac Petroleum, Inc.*, No. 22-12501, 2024 WL 1254932, at *3 (11th Cir. Mar. 25, 2024) (affirming summary judgment for employer on plaintiff's FMLA interference claim "[b]ecause [plaintiff] failed to provide certification 'that her medical conditions met the statutory standard' after [employer] requested it"); *Walker*, 2022 WL 10083816, at *2-3 (affirming summary judgment for employer on plaintiff's FMLA interference claim because plaintiff did not submit the required documentation to the employer or its third-party benefits administrator).

V. **Count II further fails because Walmart terminated Plaintiff for a reason wholly unrelated to any FMLA leave request**.

As discussed above in section II, (i) Plaintiff never wanted or requested FMLA leave and only wanted to be placed in a position where she could continue working [Facts, 25], and (ii) as discussed in section IV(A), in order to keep Plaintiff's leave request open, Sedgwick converted Plaintiff's workers' compensation leave request into an FMLA leave request after determining that Plaintiff was ineligible for workers' compensation leave [Facts, 26].

And, even if Sedgwick's independent action were construed as Plaintiff's own FMLA request and even if Plaintiff establishes a *prima facie* case of FMLA interference based on her termination, Walmart should be granted summary judgment in its favor on Count II. As outlined above in section III, the evidence shows that Walmart terminated Plaintiff for a reason 'wholly

unrelated' to her request for FMLA leave. Specifically, Plaintiff was subject to termination under the Attendance Policy once she reached 5 occurrences – yet Plaintiff incurred a whopping 37 occurrences – and she did so even though she knew about the Attendance Policy and saw the Attendance Policy every time she logged in at work. [Facts, ¶¶ 19-21, 55, and 57].

As explained in *Chavous*, "[e]ven if [the employee] … establishe[s] a *prima facie* case of FMLA interference, the [employer] is entitled to summary judgment if it acted for a reason 'wholly unrelated' to her request for FMLA leave. *Chavous*, 576 F. Supp. 3d at 1053 (internal citation omitted). Unlike FMLA retaliation claims, there is no burden shifting or formal pretext analysis in interference claims. *Herren v. La Petite Acad., Inc.*, 820 F. App'x 900, 906 (11th Cir. 2020) (per curiam) (distinguishing between FMLA retaliation and interference claims). Instead, the employer bears the burden of establishing a lack of causal connection. *Id*. Accordingly, the question is "whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Chavous*, 576 F. Supp. 3d at 1053 (internal citation omitted).

In *Chavous*, the plaintiff repeatedly missed work and did not follow the proper procedures for reporting his absences in advance. *Chavous*, 576 F. Supp. 3d at 1053. Like the plaintiff in *Chavous*, Plaintiff here also missed work egregiously and failed to report her absences as required under company policy. [Facts, ¶¶ 18, 48, and 55]. And, even worse than the plaintiff in *Chavous*, Plaintiff ignored specific instructions directing her to report her absences while her leave request was pending. [Facts, ¶ 17, 32, 44, and 48]. And, as in *Chavous*, Plaintiff cannot identify any record evidence to the contrary, warranting summary judgment in Walmart's favor on Count II. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (noting that the non-movant cannot rest on "mere allegations" of disputes, "but must 'set forth' by affidavit or other evidence 'specific facts'" showing there is a dispute for trial (internal citation and quotation omitted)); *Leige v. Capitol Chevrolet, Inc.*, 895 F. Supp. 289, 291 (M.D. Ala. 1995) (explaining that the non-movant bears a "burden" "set[ting] forth specific facts showing that there is a genuine issue for trial").

In short, Walmart terminated Plaintiff's employment because of her excessive unauthorized and unreported absences and Walmart would have made this same decision regardless of whether Plaintiff requested or took FMLA leave. [Facts, ¶ 56]. Therefore, even if Plaintiff establishes a *prima facie* case as to Count II, this Court should grant summary judgment for Walmart. *See*

*Chavous*, 576 F. Supp. 3d at 1056 (granting summary judgment for employer on FMLA interference claim and explaining that "Chavous's repeated rule infractions provide a reason for termination that is distinct from his request for FMLA leave"); *Montgomery v. Ion Media Mgmt. Co.*, No. 8:10-cv-429, 2011 WL 1791294, at *9 (M.D. Fla. May 10, 2011) (granting summary judgment for employer because the employee was terminated for her absenteeism, not her requests for FMLA leave).

**VI.    Walmart is entitled to summary judgment on Count IV for workers' compensation retaliatory discharge because Plaintiff cannot establish the causation element of a *prima facie* case.**

As noted above, Plaintiff testified that, in her view, the ***only*** reason Walmart terminated her employment is because she could not work after her workplace accident.  [Facts, ¶ 58]. Viewing this testimony in the light most favorable to Plaintiff as the non-movant, for the purpose of summary judgment, Walmart interprets this testimony as a claim or attempt to claim compensation under Florida's Workers' Compensation law.  *See* Fla. Stat. § 440.205 ("No employer shall discharge … any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law."). However, as with Plaintiff's FMLA retaliation claim, Plaintiff cannot establish a causal connection between Plaintiff's request for workers' compensation benefits and her termination.  And, once again, even if this Court finds that Plaintiff has met her burden of establishing a *prima facie* case, Plaintiff cannot prove that Walmart's legitimate reason for terminating Plaintiff is pretextual.

Retaliatory discharge claims brought under § 440.205 are subject to the same burden-shifting analysis used in Title VII retaliation claims.  *Humphrey v. Sears, Roebuck & Co.*, 192 F.Supp.2d 1371 (S.D.Fla. 2002); *Chavous*, 2024 WL 366243, at *4.  Therefore, to avoid burdening the Court with unnecessary repetition, Walmart sometimes refers to the discussion above in sections II and III.

To establish a *prima facie* case of workers' compensation retaliation under Fla. Stat. § 440.205, a plaintiff must show that: (1) she engaged in statutorily protected conduct such as seeking workers' compensation benefits; (2) she suffered an adverse employment action; and (3) a causal connection between the protected conduct and the adverse employment action." *McGuire v. United Parcel Serv., Inc.*, 763 F. App'x 890, 897 (11th Cir. 2019).  At issue here is only the third element.

A plaintiff may establish the causation element by showing that a statutorily protected activity and an adverse employment action were temporally proximate, but temporal proximity alone is insufficient unless – as held by the Supreme Court – the events are "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). "A ***three to four month*** disparity between the statutorily protected expression and the adverse employment action is ***not*** enough." *Thomas*, 506 F.3d at 1364 (emphasis added); *see also Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004) (affirming summary judgment for employer and holding that, "[b]y itself, the three month period … does not allow a reasonable inference of a causal relation between the protected expression and the adverse action"); *see also* cases cited by the Supreme Court in *Clark County Sch. Dist.*, 532 U.S. at 273-74: *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3 month period insufficient) and *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4 month period insufficient). Furthermore, the ***absence*** of any "adverse actions that commenced ***immediately*** after [Plaintiff] engaged in protected activity" further negates causation. *Ahern v. Delta Air Lines, Inc.*, 609 F. Supp. 3d 1314, 1336 (S.D. Fla. 2022) (granting summary judgment and finding that the plaintiff failed to meet her *prima facie* burden to show a causal connection) (emphasis added).

Thus, in the absence of other evidence showing causation, remote temporal proximity sinks Plaintiff's retaliatory discharge claim. This is exactly the situation here because nearly three and a half months passed between Plaintiff's workers' compensation protected activity and the termination of her employment, and Plaintiff cannot produce any other causation evidence.

On February 8, 2023: (i) Plaintiff sustained a workplace injury and reported it to her salaried supervisor, Derick Martinez ("Martinez"); (ii) Martinez then prepared a report (entitled Associate Incident Report) describing how the injury happened, which was signed by Plaintiff; and (iii) Martinez submitted the Report to Walmart to open a workers' compensation claim for Plaintiff. [Facts, ¶ 10]. Also, on February 8, 2023, Plaintiff requested Walmart to provide medical treatment for her workplace injury. [*Id.*].

Further, on February 8, 2023, Plaintiff executed a Release of Medical Information Authorization ("Release") authorizing Walmart's designated workers' compensation healthcare providers to use and disclose Plaintiff's protected health information as described in the Release. [Facts, ¶ 12]. As Plaintiff agreed when she signed the Release, Plaintiff's medical information could be used for, among other things, "to assess [Plaintiff's] ability to qualify for leave of absence

or return to full or modified duty."  [*Id.*].

Based on these events, it is indisputable that Plaintiff first engaged in protected activity on February 8, 2023.

"Temporal proximity is calculated ***beginning***, 'on the date the employer gains knowledge of the protected expression.'"  *Raspanti v. Four Amigos Travel, Inc.*, 266 Fed. Appx. 820, 823 (11th Cir. 2008) (citing *Higdon*, 393 F.3d at 1220) (internal quotation omitted) (emphasis added). On February 8, 2023, Walmart gained knowledge of Plaintiff's workplace injury, her request for medical care from Walmart for the workplace injury, and her intent to seek workers' compensation benefits from Walmart, and, therefore, Walmart opened Plaintiff's workers' compensation claim. [Facts, ¶¶ 10 and 12].  The next day, February 9, 2023, Walmart sent Plaintiff to Walmart's designated workers' compensation medical provider for treatment.  [Facts, ¶ 13].  Therefore, February 8, 2023, is the date of Plaintiff's protected activity for the purpose of her workers' compensation retaliation claim.  *See Noboa v. Sygma Network, Inc.*, No. 6:10-CV-1753-ORL-36, 2012 WL 1438833, at *4 (M.D. Fla. Apr. 25, 2012) ("Plaintiff engaged in protected activity when he reported his work related injury, filled out the Defendant's corresponding paperwork, and was taken to a clinic by supervisors pursuant to Defendant's established procedure for workers' compensation injuries."); *Salus v. Island Hospital Florida Management, Inc.*, 289 So. 3d 926, 929 (Fla. 4th DCA 2020) (An employee "attempt[s] to claim compensation" – and, thus. engages in protected activity – by "notify[ing] his employer of the injury."); *Raspanti*, 266 Fed. Appx. at 823; *Higdon*, 393 F.3d at 1220.

Walmart terminated Plaintiff's employment on May 18, 2023, nearly three and a half months after the protected activity on February 8, 2023.  [Facts, ¶ 56].  Therefore, Plaintiff cannot establish the *prima facie* causation element based on temporal proximity alone.  As the Eleventh Circuit held in *Thomas*:

> In opposing summary judgment, Thomas failed to present evidence from which a reasonable jury could find any causal connection between her April 2005 complaint(s) of sexual harassment and the termination of her employment ***three (3) months*** later in July 2005. That three (3) month period, without more, does not rise to the level of 'very close.'

506 F.3d at 1364 (citing *Clark County Sch. Dist.*, 532 U.S. at 273) (emphasis added); *see also Higdon*, 393 F.3d at 1221.  And, because Plaintiff cannot present any other evidence of causation,

her *prima facie* case fails.

Indeed, Plaintiff's workers' compensation retaliation claim lies entirely in her mere opinion that Walmart terminated her employment because she could not work after the workplace accident. [Facts, ¶ 58]. Plaintiff's subjective belief, of course, is not evidence and cannot be used to overcome summary judgment. *Gillman v. Okaloosa Cnty. Fla.*, 58 F. Supp. 3d 1305, 1312 (N.D. Fla. 2014) (granting summary judgment on plaintiff's workers' compensation retaliation claim under Florida Statute § 440.205 and explaining that the plaintiff's "mere subjective belief that she was retaliated against is not by itself sufficient to survive summary judgment"); *Dillahay v. City of Eastpoint*, No. 1:04 CV 0063 WSD, 2006 WL 449179, at *3, *8 (N.D. Ga. Feb. 22, 2006), aff'd sub nom., 251 F. App'x 656 (11th Cir. 2007) (granting summary judgment for employer on retaliation claim because plaintiff failed to produce evidence supporting her subjective belief that the defendants retaliated against her).

To the extent Plaintiff may argue that other evidence exists, Plaintiff still cannot establish *prima facie* causation. Although § 440.205 does not require Plaintiff to prove that her report of the workplace injury was Walmart's "only reason" for termination, she must show that it was a "**substantial factor**" in the termination decision. *Allan v. SWF Gulf Coast, Inc.*, 535 So.2d 638, 639 (Fla 1st DCA 1988) (affirming verdict where "the court directed the jury to determine whether the desire to retaliate was a substantial factor in appellant's discharge") (emphasis added).

The evidence establishes that Plaintiff's report of the workplace injury was not a substantial factor in Walmart's decision to terminate her employment. Plaintiff was terminated because she accumulated more than five occurrences in a six-month period in violation of the Attendance Policy – indeed, Plaintiff accumulated 37 occurrences, more than 7 times the amount that subjects associates to termination. [Facts, ¶¶ 18-20 and 55-56]. The analysis in *Chavous*, where the court granted summary judgment for the employer on the plaintiff's workers' compensation retaliation claim, applies equally here:

> Chavous's final termination … was unrelated to … his request for … workers' compensation benefits. Instead, it was due to his failure to report to work as directed. Therefore, Chavous has not stated a *prima facie* case for retaliation under the FWCA, and, again, we need not reach whether the City's reason for terminating him was pretextual.

*Chavous*, 2024 WL 366243, at *4. Just like the plaintiff in *Chavous*, Plaintiff's protected activity

was not remotely related to her termination, let alone a substantial factor in the termination decision.

For the foregoing reasons, Plaintiff cannot establish the causation element of a *prima facie* case of retaliatory discharge in violation of Fla. Stat. § 440.205.

**VII. Even if Plaintiff could establish a *prima facie* case of workers' compensation retaliation, Count IV fails to withstand summary judgment because Walmart has articulated a legitimate, non-retaliatory reason for Plaintiff's termination and Plaintiff cannot establish it is pretextual.**

If Plaintiff were to establish a *prima facie* case, the burden would shift to Walmart to proffer a legitimate, non-discriminatory reason for termination. *Gogel*, 967 F.3d at 1136; *Walker*, 2022 WL 10083816, at *3. Walmart meets this burden because Walmart terminated Plaintiff's employment for the legitimate reason of her repeated attendance violations (*see* sections III-IV above).

Therefore, to defeat summary judgment, Plaintiff must demonstrate that Walmart's proffered reason for its termination decision – Plaintiff's egregious attendance violations – was merely a pretext to mask its real reason – Plaintiff's workers' compensation protected activity – and that, but for this latter action, Walmart would not have terminated her. *See Gogel*, 967 F.3d at 1138 (affirming summary judgment for employer on plaintiff's retaliation claim and explaining that the plaintiff "failed to show that a reasonable jury could find that but for [her protected activity] she would not have been fired); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332-33 (11th Cir. 1998) (affirming summary judgment for employer on plaintiff's retaliation claim and explaining that an employee's own evaluation and opinion is insufficient to establish pretext) (abrogated on other grounds). As explained above in section III, the evidence shows that Plaintiff cannot establish pretext. Therefore, even if Plaintiff were to establish a *prima facie* case, the Court should grant summary judgment in Walmart's favor on Count IV.

## CONCLUSION

Based on the foregoing, Defendant, WAL-MART ASSOCIATES, INC., respectfully requests that the Court enter summary judgment in favor of Walmart on all Counts of the Complaint and enter final judgment closing this case.

        Respectfully submitted,

        **LIEBLER, GONZALEZ & PORTUONDO**
        *Attorneys for Defendant*
        Courthouse Tower - 25th Floor
        44 West Flagler Street
        Miami, FL 33130
        (305) 379-0400
        service@lgplaw.com

By: */s/ Derek H. Sparks*
   DEREK H. SPARKS
   Florida Bar No. 11434
   dhs@lgplaw.com
   CHRISTINE M. MANZO
   Florida Bar No. 52121

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that on May 10, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to the following:

R. Martin Saenz, Esq.
THE SAENZ LAW FIRM, P.A.
20900 NE 30th Avenue, Suite 800
Aventura, FL 33180
martin@legalopinionusa.com
***Attorneys for Plaintiff***

        */s/ Derek H. Sparks*
        DEREK H. SPARKS