UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-81026-ROSENBERG

SINDY JEAN,

    Plaintiff,

v.

WAL-MART ASSOCIATES, INC.,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

**THIS CAUSE** is before the Court on Defendant Wal-Mart Associates, Inc.'s Amended Motion for Summary Judgment [DE 54]. The Court has reviewed the Motion, Plaintiff Sidney Jean's Response [DE 56], Defendant's Reply [DE 58], and the record and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED** for lack of subject matter jurisdiction.

**I.    BACKGROUND**

Plaintiff Sindy Jean filed this action pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and Section 440.205 of the Florida Statutes. DE 1 ¶ 1. Plaintiff brings the following claims against Defendant Wal-Mart Associates, Inc.: (1) interference under the FLMA based on Defendant's failure to provide information; (2) interference under the FMLA resulting in Plaintiff's termination; (3) retaliation under the FMLA; and (4) retaliation under Florida law. *See generally id.* Plaintiff seeks to recover actual damages—"including back pay, front pay, loss of benefits, future pecuniary loss, [and] lost future earnings capacity"—and liquidated damages for her FMLA claims. *Id.* ¶ 42, 56, 74. She seeks "back wages from the date

of discharge to the present; front wages; [and] compensatory mental damages" for her state law claim. *Id.* ¶ 89.

On July 16, 2024, Defendant filed the instant Motion for Summary Judgment. DE 54. On July 29, 2024, Plaintiff filed her Response. DE 56. Defendant filed a Reply on August 2, 2024. DE 58. The parties attached statements of material facts to all filings. DE 53, 55, 57.

## II. LEGAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

## III. PLAINTIFF'S PREMISE

This case is about communications between an employer and an employee, and certain communications are critical—even dispositive—to this case. Because certain communications are dispositive, Plaintiff attempts to survive summary judgment by weaving an underlying premise into her characterization of certain communications. That premise is that when Defendant (through its agent) e-mailed "fredlynnpierre@gmail.com," that e-mail did not provide Plaintiff with any notice or information. As a threshold matter, the Court rejects that premise.

2

The above-referenced e-mail belonged to Plaintiff's interpreter.[1] In response to several of Defendant's facts about materials e-mailed to Plaintiff, Plaintiff argues that "[t]he referenced email is not Ms. Jean's and if she used it in the past, she began using another email address in 2023." *See, e.g.*, DE 55 ¶ 27-29, 31-32, 39. In its Statement of Material Facts, Defendant notes that it used that e-mail based on a phone call from Plaintiff, in which Defendant had asked for the best e-mail address to contact Plaintiff. *See* DE 53 ¶ 23; DE 53-9 ("What is the best email address to contact you? fredlynnpierre@gmail.com."). Plaintiff argues that her *interpreter* provided that e-mail, not her, but she does not dispute that the e-mail was provided to Defendant in response to Defendant's question. DE 55 ¶ 23. Stated differently, Plaintiff's argument is that Defendant was not entitled to rely on the information given by her interpreter, but Plaintiff's interpreter provided the e-mail address in response to the question of how the *Defendant* (through its agent) could best contact the *Plaintiff*. *See, e.g.*, DE 53-9 (noting that the interpreter provided specific information about Plaintiff's claim including her last day of work, first day of absence, and her claim number).

What Plaintiff is really attempting to do, then, is disavow the information that her interpreter provided without being candid that that is, in fact, her position. Indeed, what is Plaintiff's argument? It's not that her interpreter is a rogue agent. It's not that she did not select her interpreter. It's not that her interpreter gave Defendant false information or provided answers to questions without authorization. It's not even that she was not physically present when the interpreter was speaking. Plaintiff simply does not want to be bound by her interpreter's answer, even though the e-mail provided to Defendant was a direct result of *Plaintiff's* actions (through her selection of the interpreter). This is an unreasonable proposition, particularly given that

---

[1] Plaintiff's primary language is Creole. DE 55 ¶ 61; DE 57 ¶ 61. She used an interpreter to communicate with Defendant. DE 55 ¶ 62; DE 57 ¶ 62.

3

Plaintiff has provided no basis for her interpreter's information to be disregarded (such as the interpreter acting as a rogue agent). No reasonable juror could therefore credit this proposition, and the Court declines to conclude that there is any issue of disputed fact on this subject. When Defendant sent e-mails to the e-mail address provided to Defendant by Plaintiff's agent, Defendant provided the e-mails to Plaintiff.

## IV.  MATERIAL FACTS

The following facts are undisputed.

### The Parties Involved

1. Plaintiff worked for Defendant at Store 3348 between January 4, 2018, and May 18, 2023. DE 53 ¶ 2. As of the date of Plaintiff's workplace injury on February 8, 2023, Plaintiff was working as a Stocking Team Associate and she held this position until the termination of her employment on May 18, 2023. *Id.* ¶ 11.

2. Sedgwick Claims Management Services, Inc. ("Sedgwick") is the third-party administrator that handles the workers' compensation and FMLA leave of absence process for Defendant's employees at Store 3348. *Id.* ¶ 3.

3. Sedgwick communicates with employees about the requested leave of absence, reviews the employee's medical documents in evaluating the leave request, makes the decision whether to approve or deny the leave request, and notifies the employee whether the leave request has been approved or denied. *Id.* ¶ 4.

4. No leave decisions are made by anyone at the Store level. *Id.*

5. Sedgwick notifies Defendant when an employee applies for leave and whether Sedgwick has approved or denied the leave. *Id.* ¶ 5.

**Plaintiff's Original Leave Request**

6. The following occurred on February 8, 2023:

    a. Plaintiff sustained a workplace injury. *Id.* ¶ 10.

    b. Plaintiff reported her injury to her salaried supervisor, Derick Martinez ("Martinez"), who then prepared a report—signed by Plaintiff—describing how the injury happened. *Id.* Martinez submitted the Report to Defendant, which opened a workers' compensation claim for Plaintiff. *Id.*

    c. Plaintiff requested that Defendant provide medical treatment for her workplace injury. *Id.*

    d. Plaintiff executed a Release of Medical Information Authorization ("Release") authorizing Walmart's designated workers' compensation healthcare providers to use and disclose Plaintiff's protected health information as described in the Release. *Id.* ¶ 12. As Plaintiff agreed when she signed the Release, Plaintiff's medical information could be used to assess whether she qualified for leave of absence or return to full or modified duty at work. *Id.*

7. On February 9, 2023, Defendant sent Plaintiff to Defendant's designated workers' compensation medical provider for treatment. *Id.* ¶ 13. That same day, the medical provider released Plaintiff to return to work with the following restrictions: Plaintiff

        may carry, grasp, lift from the floor to waist, lift from the waist to overhead, pull, push, and reach overhead no more than five lbs. ("Lifting Restriction"). *Id.*

8. On February 13, 2023, Sedgwick received a call initiated by Plaintiff. *See id.* ¶ 23; DE 55 ¶ 23; DE 53-9.

    a. During that conversation, Plaintiff or her interpreter gave Sedgwick the email fredlynnpierre@gmail.com for future communications with Plaintiff. *Id.*

    b. Starting on February 13, 2023, Sedgwick used the fredlynnpierre@gmail.com email address in communicating with Plaintiff. *Id.*

9. On February 13, 2023, Sedwick sent Plaintiff an email attaching a letter entitled "Understanding Your Leave of Absence." [2] DE 53 ¶ 14.

    a. As stated in the letter, Sedwick "received notice of [Plaintiff's] need for a workers' compensation leave, and [Sedgwick has] opened a cxleave of absence for [Plaintiff]."[3] *Id.*

    b. For workers' compensation leave requests, employees are not required to provide supporting medical documents. *Id.* ¶ 15. Sedgwick obtains these documents directly from the medical

---

[2] Plaintiff argues that this fact is disputed on the basis that "[t]he document does not unequivocally say that it refers to a 'worker's compensation' leave of absence only." DE 55 ¶ 14. However, Plaintiff does not dispute the proposition in the fact itself: that the letter was sent on February 13, 2023, and was entitled "Understanding Your Leave of Absence." Therefore, the Court deems this fact undisputed.

[3] Plaintiff argues that this fact is disputed for the same reason as Fact 9. DE 55 ¶ 14. However, Plaintiff does not dispute the quoted language. Therefore, the Court deems this fact undisputed.

          provider designated by Defendant pursuant to the signed Release.[4] *Id.*

    c.    For all other medical leaves of absence, however, including FMLA leave requests, employees are responsible for providing all required medical documents and certifications to Sedgwick as Sedgwick may request.[5] *Id.*

    d.    Because Plaintiff's leave was being processed only as a workers' compensation leave, Sedgwick informed Plaintiff that "[y]ou do not need to provide medical information as we will work with workers' compensation and will process your leave of absence based on the information we receive from them."[6] *Id.* ¶ 16.

    e.    Under a bolded heading, "**REMINDER**," the letter notifies Plaintiff that "[y]ou are required to report each scheduled day missed through your normal call-in procedures . . . until your claim [for leave] is approved." *Id.* ¶ 17.

---

[4] Plaintiff argues that this fact is disputed on the basis that "[t]he document also suggests that it refers to a 'FMLA' leave of absence" and "the document explicitly details that [Plaintiff] did 'not need to provide medical information as [Walmart/Sedgwick] will work with worker's compensation and will process [her] leave of absence based on the information [Walmart/Sedgwick] receive[s] from them." DE 55 ¶ 15. However, the quote Plaintiff pulls from the letter directly supports the proposition at issue: that for workers' compensation leave, employees need not directly provide supporting medical documents. Therefore, the Court deems this fact undisputed.

[5] Plaintiff disputes this fact on the same basis as Fact 9.b. Therefore, the Court deems this fact undisputed, as Plaintiff has not provided any evidence contrary to the proposition.

[6] Plaintiff argues that this fact is disputed on the basis that the document "suggests that leave of absence was being processed for worker's compensation *and* for an FMLA request." DE 55 ¶ 16 (emphasis added). However, Plaintiff cites only to the letter itself without providing further evidence that the leave claim was also being processed for FMLA leave. Given that the letter specifically states that Defendant received Plaintiff's request for workers' compensation leave and does not request further medical information, and given that the letter references the FMLA only to state that Plaintiff is *eligible* for both FMLA leave and personal workers' compensation leave, but not being processed for both, the Court deems this fact undisputed. *See* DE 53 Exh. A-6 at 4.

**Defendant's Attendance Policy**

9. Under Defendant's Attendance Policy, unauthorized absences or late arrivals must be reported by either (1) calling the Associate Information Line or (2) using the Report an Absence form available on WalmartOne, which associates may access by logging in with their username and passcode through an app on their mobile phone. *Id.* ¶ 18.

10. Under the Attendance Policy, employees incur occurrences as follows (this list is not all-inclusive): (1) one occurrence for failing to clock in for a scheduled shift, which is an unauthorized absence; and (2) two occurrences if the employee fails to clock in for a scheduled shift and also fails to report the unauthorized absence ("No Call/No Show"). *Id.* ¶ 19.

11. If an associate accumulates five or more occurrences in a rolling 6-month period, the associate is subject to termination. *Id.* ¶ 20.

12. During Plaintiff's employment, Plaintiff knew that she was required to follow the Attendance Policy. *Id.* ¶ 21. Plaintiff saw the Attendance Policy every day when she logged in to the computer at work. *Id.*

13. The February 13th letter provided Plaintiff with another option to report any scheduled days of work that she misses. *Id.* ¶ 21. The letter contains a QR code reader for One.Walmart.Com. *Id.* When scanned with a cell phone camera, One.Walmart.Com opens. *Id.* Once there, Plaintiff may report any scheduled days that she misses by clicking on the link on the top right of the page, "Report an

Absence," as she was required to do under the Attendance Policy and as Sedgwick directed her to do while her leave request was pending. *Id.*

### Sedgwick's Conversion of Plaintiff's Leave Request

14. On April 11, 2023, Sedgwick determined that Plaintiff was ineligible for workers' compensation leave because Plaintiff "was never taken out of work by [an] authorized doctor" and the Walmart store where Plaintiff was working had received the Lifting Restriction allowing her to work as of February 9, 2023, which is the day immediately after her workplace injury. *Id.* ¶ 24.

15. In denying workers' compensation leave, Sedgwick concluded that "no out of work time [for Plaintiff is] covered by [Plaintiff's workers' compensation] claim." *Id.*

16. After the Lifting Restriction resulting from the 2023 workplace accident, Plaintiff did not request FMLA leave.[7] *Id.* ¶ 25.

17. Because Sedgwick concluded that Plaintiff was not eligible for workers' compensation leave, Sedgwick converted Plaintiff's workers' compensation leave request to an FMLA medical leave request on April 11, 2023.[8] *Id.* ¶ 26.

---

[7] Plaintiff disputes this fact by citing to Plaintiff's deposition testimony and stating that "[a] request for time off as a result of one's serious medical condition is, by definition, a request for FMLA leave." DE 55 ¶ 25. However, in the testimony cited, Plaintiff (1) says that she "contacted workers' comp after the accident," and (2) denies that she requested any other leaves of absence, either under the FMLA or any other law or store policy. DE 55-1 at 75:25-76:17.  Furthermore, whether a request for time off for serious injury is "by definition" FMLA leave is a legal argument.  Therefore, the Court deems this fact—that Plaintiff did not explicitly request FMLA leave—undisputed.
[8] Plaintiff cites to the same February 13, 2023, letter for the proposition that "Sedgwick always treated [Plaintiff's] request for leave as a request under worker's compensation and under the FMLA." DE 55 ¶ 26.  The Court rejects this proposition for the same reason as Fact 9.b.  Plaintiff provides no other evidentiary support to rebut this contention.  Therefore, the Court deems this fact undisputed.

9

18. On April 12, 2023, Sedgwick sent Plaintiff an email attaching a new "Understanding Your Leave of Absence" letter, as well as a packet of FMLA leave documents ("FMLA Packet"). *Id.* ¶ 27.

19. The Understanding Your Leave of Absence letter notifies Plaintiff that she is eligible for FMLA leave, "if approved." *Id.* ¶ 28. The Notice of Eligibility Rights & Responsibilities ("FMLA Rights Notice") further notifies Plaintiff that, if FMLA leave is approved, "[y]ou have the right under FMLA for up to 12 weeks of unpaid leave in a 12-month period, calculated as a 'rolling' 12-month period measured backward from the date of any FMLA leave usage." *Id.*

20. The FMLA Rights Notice, in bold print, notifies Plaintiff that, "**[i]n order to determine whether your absence qualifies for leave, you must provide [Sedgwick] with a completed certification form no later than 05/02/2023**." *Id.* ¶ 29. The deadline of May 2, 2023, allowed Plaintiff 20 days to submit the completed certification form. *Id.* ¶ 39.

21. The FMLA Packet contains the certification that Plaintiff's healthcare provider must complete for FMLA leave to be approved. *Id.* ¶ 30.

22. The FMLA Rights Notice further notifies Plaintiff that, once Sedgwick receives the required medical documents and medical certification, Sedgwick will make a final decision on Plaintiff's leave status. *Id.* ¶ 31.

23. The FMLA Rights Notice, under the bold heading, "**REMINDER**," notifies Plaintiff that she must report each scheduled day of work that she misses. *Id.* ¶ 32.

24. On April 12, 2023, Sedgwick notified Defendant that Sedgwick would make a final decision on Plaintiff's request for a leave of absence once Sedgwick receives Plaintiff's complete medical information, which Plaintiff had to submit within 20 days (May 2, 2023). *Id.* ¶ 33. Sedgwick also confirmed that Plaintiff must continue reporting each scheduled workday that she misses. *Id.*

### Plaintiff's Failure to Send in Certification

25. Plaintiff failed to provide the required medical certification to Sedgwick by the deadline of May 2, 2023, or at all.[9] *Id.* ¶ 40.

26. On May 3, 2023, Sedgwick emailed Plaintiff a letter denying FMLA leave. *Id.* ¶ 41. That same day, Sedgwick informed Defendant that it had denied Plaintiff's leave request because Sedgwick did not receive the required medical information or certification of healthcare provider. *Id.* ¶ 42. Additionally, on the same day, Sedgwick spoke with Plaintiff informing her that her FMLA leave request was denied because Plaintiff failed to provide the required medical information. *Id.* ¶ 42.

27. In the Leave Denial, Sedgwick gave Plaintiff another opportunity to provide the required medical documentation, allowing Plaintiff an additional 12 business days to do so, until May 18, 2023.[10] *Id.* ¶ 43. The Leave Denial again notified Plaintiff,

---

[9] Plaintiff disputes this fact on the basis that she "provided all of the required information and documentation the minute she signed the Release of Medical Information Authorization dated February 8, 2023," and that Sedgwick told her she did not need to provide other medical information. DE 55 ¶ 40. However, Plaintiff does not refute that the certification form is required for FMLA leave or that she did not send in a certification form. Therefore, the Court deems this fact undisputed.

[10] Plaintiff disputes this fact on the basis that because she was fired on May 18, 2023, "[a]t best, Walmart gave her until May 17, 2023, to provide the alleged required documentation. DE 55 ¶ 43. Plaintiff does not deny that the deadline in the Leave Denial was May 18, 2023. Therefore, the Court deems this fact undisputed.

11

under the bold heading "**REMINDER**," that, if she decided to remain out of work, she had to continue to report each scheduled day missed. *Id.* ¶ 44.

28. Despite receiving this second opportunity, Plaintiff did not provide the required medical information or certification of healthcare provider by the deadline of May 18, 2023, or at all.[11] *Id.* ¶ 46. Therefore, Sedgwick denied Plaintiff's FMLA leave request. *Id.*

### Plaintiff's Absences

29. Between April 26 and May 7, 2023, Plaintiff continued to have her "normal schedule" but she "didn't go" to work. *Id.* ¶ 47.

30. If an associate requests a leave of absence and the request is denied, Walmart applies the number of occurrences for unauthorized absences and No Call/No Show's that accumulated while the leave of absence request was pending, and this was done for Plaintiff's unauthorized, unreported absences. *Id.* ¶ 49.

31. Because Plaintiff's FMLA leave of absence was denied and Plaintiff failed to report her absences while her leave request was pending – as Sedgwick directed Plaintiff to do – Plaintiff accumulated more than five (5) occurrences in a rolling 6-month period, subjecting her to termination under the Attendance Policy.[12] *Id.* ¶ 54.

32. As of May 15, 2023 (three days before Plaintiff's termination date), Plaintiff accumulated 37 occurrences in the rolling 6-month period. *Id.* ¶ 55.

---

[11] Plaintiff disputes this fact on the same basis as Fact 25 and similarly does not refute the proposition at issue. *See* DE 55 ¶ 46. Therefore, the Court deems this fact undisputed.

[12] Plaintiff disputes this fact on the basis that "Walmart testified that it fired Ms. Jean because she missed days after she received the May 3 or 4 letter of FMLA denial, so whether she reported her absences or not before the May 3 or 4 letter is irrelevant." DE 55 ¶ 54. However, Plaintiff does not refute the proposition at issue—that she accumulated enough absences to subject her to termination under the policy. Therefore, the Court deems this fact undisputed.

33. On May 18, 2023, Defendant terminated Plaintiff's employment. *Id.* ¶ 56. Defendant stated that the reason for Plaintiff's termination was that Plaintiff accumulated more than five occurrences in a 6-month period in violation of the Attendance Policy.[13] *Id.*

## V. THE PARTIES' ARGUMENTS

In its Motion for Summary Judgment, Defendant argues that the Court should grant summary judgment in Defendant's favor on each count in Plaintiff's Complaint. DE 54 at 1. First, Defendant argues that Count I (FMLA interference based on failure to provide information) fails because (1) Defendant provided Plaintiff with notice of her FMLA rights and obligations through its third-party administrator, Sedgwick, and (2) Defendant converted Plaintiff's workers' compensation leave request to an FMLA medical leave request after determining that Plaintiff was ineligible for workers compensation leave. *Id.* Second, Defendant argues that Count II (FMLA interference resulting in termination), Count III (FMLA retaliation), and Count IV (retaliatory discharge under Florida law) fail for several reasons, including that "Walmart legitimately terminated Plaintiff's employment due to Plaintiff's serial attendance violations." *Id.*

In her Response, Plaintiff argues that genuine issues of material fact exist as to all counts. However, Plaintiff does not directly address Count I (FMLA interference based on failure to provide information). As to Count II, she argues that Defendant expressly told Plaintiff not to send in her medical information; she in fact sent in all information necessary by signing a medical release; and Defendant refused to give Plaintiff work duties that complied with her medical restrictions. *Id.* at 8-10. As to Count III (FMLA retaliation), she argues that she was engaged in

---

[13] Plaintiff disputes this fact on the same basis as Fact 31. Therefore, the Court deems this fact undisputed.

13

protected activity; Defendant fired her because of her engagement in protected activity; and Defendant's purported reason for termination was pretextual. DE 56 at 3-7.  As to Count IV, Plaintiff argues that Defendant had a retaliatory motive; Defendant incorrectly counted her absences; and Defendant's employees forced Plaintiff to do unauthorized work and to go home. *Id.* at 10-12.

In its Reply, Defendant argues that (1) Count I fails because Plaintiff did not specifically address this count in her Response, and furthermore Count I fails on the merits; and (2) Counts II, III, and IV fail because Plaintiff failed to rebut the record evidence and misstated the legal standards.  DE 58 at 1-2.

## VI. ANALYSIS

The Court addresses each count in turn.

### a. *Count I: FMLA Interference for Failure to Provide Information*

Plaintiff contends that Defendant interfered with her right to FMLA leave because "[d]espite its knowledge of the Plaintiff's medical condition, the Defendant failed to notify the Plaintiff of her eligibility status and rights under the FMLA and failed to notify the Plaintiff whether her leave was or could be designated as FMLA leave." DE 1 ¶ 40.  To succeed on an interference claim under the FMLA an employee must satisfy three elements: (1) that she was entitled to a benefit under the FMLA; (2) that her employer denied her that benefit; and (3) harm or prejudice resulted from the employer's interference. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023).  One such benefit is taking leave for certain family and medical reasons. *Ramji v. Hosp. Housekeeping Sys., LLC*, 992 F.3d 1233, 1241 (11th Cir. 2021).

Although Defendant raises arguments as to the second and third elements of Count I in its Motion, Plaintiff does not brief this count in her Response. *See* DE 54 at 9-11; DE 56 at 8-10. Plaintiff's Response refers only to *one* interference claim under the FMLA. *See* DE 56 at 8. Furthermore, Plaintiff makes no reference to Defendant's alleged failure to notify Plaintiff anywhere in this section, or anywhere else in the Response. *See generally id.* "If a party fails to adequately brief a claim in responding to a motion for summary judgment, [courts] will consider that claim to have been abandoned." *Ajomale v. Quicken Loans, Inc.*, 860 F. App'x 670, 671 (11th Cir. 2021). A party fails to adequately brief a claim where it is not plainly and prominently raised, such as in a discrete section of his argument. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Furthermore, failure to refute opposing arguments "operates as a waiver of those arguments and is akin to a failure to respond." *Carter v. BPCL Mgmt. LLC*, No. 19-CV-60887, 2021 WL 7502562, at *1 (S.D. Fla. Sept. 22, 2021); see also Local Rule 7.1(c) (permitting a court to grant a motion by default when a respondent fails to respond). Plaintiff's Response does not address, let alone "plainly and prominently" argue Count I for FMLA interference based on the failure to provide information. Therefore, Plaintiff has abandoned Count I or failed to refute Defendant's argument. As it is undisputed that Defendant properly notified Plaintiff of her rights under the FMLA, see Facts 18 and 19, and Plaintiff has not refuted these arguments, Plaintiff's claim for interference fails.[14] Accordingly, Defendant's Motion for Summary Judgment as to Count I is **GRANTED**.

---

[14] Furthermore, even if the Court examines Count I on the merits, it fails for the same reason as Count II (FMLA interference for termination) below. Because Plaintiff never provided a completed certification form to Sedgwick, Plaintiff was not entitled to a benefit under the FMLA, and Count I fails. *See* Part VI.b.

15

### b.   *Count II: FMLA Interference for Termination*

Plaintiff alleges that Defendant interfered with her right to FMLA leave when it terminated her employment. DE 1 ¶ 40.  In its Motion, Defendant argues that Count II fails "because Plaintiff cannot establish that she was entitled to take FMLA leave, let alone that the FMLA request was the proximate cause of her termination." DE 54 at 11.

"Absent unusual circumstances, an employee must . . . comply with an employer's 'usual and customary notice and procedural requirements for requesting leave.'" *Walker v. United Parcel Serv., Inc.*, No. 21-11267, 2022 WL 10083816 (11th Cir. 2022) (quoting 29 C.F.R. §§ 825.302(d), 825.303(c)).  An employer may require that an employee provide certification through a health care provider to support his leave request if the employee is "unable to perform one or more of the essential functions of the employee's position." 29 C.F.R. § 825.305(a).  "If [an] employee does not provide a complete and sufficient certification or any certification, the 'employer may deny the taking of FMLA leave.'" *Walker*, 2022 WL 10083816, at *2 (quoting 29 C.F.R. § 825.305(c)).  The burden is on the employee to furnish certification or authorize the healthcare provider to release a certification to the employer. *Id.*  "If the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 825.313(b).

Here, the following facts are undisputed:

- Sedgwick notified Plaintiff that she had to provide a completed certification form by May 2, 2023, to be considered for leave. Facts 19-22.

- Plaintiff did not provide the certification form by May 2, 2023. Fact 25.

- Sedgwick denied Plaintiff's claim, but gave her a second chance to provide the certification, this time with a deadline of May 18, 2023. Fact 27.

16

- Plaintiff did not provide the certification form by May 18, 2023. Fact 28.
- Plaintiff never provided a certification form to Sedgwick. Facts 25, 28.

Because Plaintiff never provided a completed certification form to Sedgwick, under FMLA regulations, "the leave is not FMLA leave." *See* 29 C.F.R. § 825.313(b). Therefore, Plaintiff was not entitled to a benefit under the FMLA, and Count II fails. Accordingly, Defendant's Motion for Summary Judgment as to Count II is **GRANTED**.

    *c.*    *Count III: FMLA Retaliation*

"In an FMLA retaliation case, unless there is direct evidence of the employer's retaliatory intent, [the Eleventh Circuit] employs the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). Under that framework, an employee must establish a *prima facie* case of retaliation, showing that "(1) he engaged in statutorily protected activity, (2) he suffered an adverse employment decision, and (3) the decision was causally related to the protected activity." *Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008). If the employee has done so, the burden shifts to the employer, who must "articulate a legitimate, nondiscriminatory reason" for the adverse employment decision. *Schaaf*, 602 F.3d at 1243. If the employer does so, the burden shifts back to the employee, who must show that the proffered reason was pretextual. *Id.* at 1244.

As a threshold matter, for the same reason that Count II fails—that Plaintiff failed to submit a completed certification form—so does Count III. The regulations are clear that "[i]f the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 825.313(b). Therefore, the time Plaintiff took off is not "statutorily protected activity" under the FMLA; they

17

are just unexcused absences from work. As Plaintiff has not established a *prima facie* case of retaliation, Count III fails.

Therefore, for the foregoing reasons, Defendant's Motion for Summary Judgment as to Count III is **GRANTED**.

>    d.    Count IV: Section 440.205 of the Florida Statutes

After a court dismisses the federal claims in an action, it has "the discretion either to continue to exercise supplemental jurisdiction over the state claims or to dismiss them." *Silas v. Sheriff of Broward Cnty.*, 55 F.4th 863, 865 (11th Cir. 2022). As summary judgment has been entered in Defendant's favor as to Counts I, II, and III, no federal law claims remain. Furthermore, as to the possibility of diversity jurisdiction in this case, even if the parties are diverse, the amount-in-controversy requirement is not met. "District courts may rely on their judicial experience and common sense to determine [whether] a claim satisfies the amount-in-controversy requirement." *Digital Age Marketing Grp. v. Sentinel Ins. Co.*, 504 F. Supp. 3d 1345, 1347 (S.D. Fla. 2020). Here, the Court's judicial experience counsels that Plaintiff's wages would have approximated minimum wage. Additionally, the record reflects that Plaintiff mitigated her damages by accepting at least two other jobs since her termination. *See* DE 55-1 at 86:2-88:21. As a result, the Court is not persuaded that there is at least $75,000 in controversy in this case, and there is no diversity jurisdiction. The Court declines to continue to exercise supplemental jurisdiction over the state law claim in this case.

### VII.    CONCLUSION

It is **ORDERED AND ADJUDGED** that

- Defendant's Amended Motion for Summary Judgment [DE 54] is **GRANTED** as to Counts I, II, and III.

- The Court **DECLINES TO EXERCISE JURISDICTION** over Count IV, the remaining state law claim, and that Count is **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**.

- The Clerk of Court is directed to **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 27th day of August, 2024.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record